# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:10-cr-00596-GMN-GWF |
| Plaintiff, | **ORDER** |
| vs. | **Defendant's Motion for Return of Seized Property (#14)** |
| PAUL WOMMER, | |
| Defendant. | **Government's Motion to Dismiss Defendant's Motion for Return of Seized Property (#26)** |

This matter is before the Court on Defendant Paul Wommer's Motion for Return of Seized Property (#14), filed on June 29, 2011; the Government's Response to Motion for Return of Seized Property (#22), filed on July 29, 2011; and Defendant's Reply to Government's Response to Motion for Return of Seized Property (#23), filed on August 8, 2011. The Court scheduled a hearing on the above motion on Monday, August 15, 2011. On Friday, August 12, 2011, however, the Government filed its Motion to Dismiss Wommer's Motion for Return of Seized Property (#26) on the ground that Defendant's motion is not ripe and the Court does not have jurisdiction to decide it at this stage of the proceeding. The Court continued the hearing on Defendant's motion for return of seized party to permit the issue of ripeness and jurisdiction to be fully briefed. Defendant filed his Response to the Government's Motion to Dismiss Defendant's Motion for Return of Seized Property (#29) on September 15, 2011. The Government filed its Reply on October 25, 2011.

## BACKGROUND

Defendant Paul Wommer is an attorney-at-law. According to the superceding indictment, between June 30 and July 8, 2010 Mr. Wommer made four withdrawals, each in the amount of $9,500.00, from his personal bank account at Nevada State Bank. On July 9, 2010, Mr. Wommer

withdrew another $6,000.00 from that account. *Superceding Indictment (#30), p. 2.* On July 12, 2010, Mr. Wommer made two withdrawals each in the amount of $9,500.00 from his Nevada State Bank business account, "Wommer Law Offices, Incorporated." *Id. p. 3.* On July 13, 2010, Mr. Wommer made an additional withdrawal of $9,500.00 from the business account. *Id. p. 2.* The total amount withdrawn by Mr. Wommer from these accounts was $72,500.00.

Mr. Wommer provided the withdrawn funds to his part-time legal assistant, Angela Lambelet, who deposited them in her personal account at Nevada State Bank. According to the indictment, Ms. Lambelet made deposits of $9,500.00 into her account on June 30, July 2, 7, 12, 13 and 14, 2010. She deposited $9,200.00 into her account on July 15, 2010. *Superceding Indictment (#30), pp. 2-3.* The total of the deposits charged in the indictment is $66,200.00. The bank reported Ms. Lambelet's deposits to the Internal Revenue Service ("IRS").

On August 6, 2010, United States Magistrate Judge Peggy Leen issued a Seizure Warrant which authorized any special agent of the Internal Revenue Service Criminal Investigation to seize the funds in Ms. Lambelet's Nevada State Bank checking account. The Government executed the seizure warrant on August 9, 2010 and thereafter received an official check from Nevada State Bank in the amount of $75,700.62. *Government's Response to Motion for Return of Seized Property (#22), Exhibit 2.*

On August 9, 2010, an IRS agent interviewed Ms. Lambelet who allegedly stated that she deposited the funds into her account at Mr. Wommer's request. *See Government's Response to Defendant's Motion to Dismiss (#21), Exhibit A, Memorandum of Interview.* Ms. Lambelet stated that she had told Mr. Wommer that she would only deposit the funds into her account if she did not have to pay tax on the funds and it was not illegal. Mr. Wommer assured her that if she deposited less than $10,000 on each occasion, she would not owe any tax and would not be in any trouble. Ms. Lambelet stated that she was aware that Mr. Wommer had issues with the IRS and she was aware that she was hiding his money from the IRS, but she did not know she was doing anything illegal.

On August 11, 2010, the IRS agent interviewed Mr. Wommer who allegedly admitted that all of the funds in Ms. Lambelet's personal bank account belonged to him. *See Government's*

*Response to Defendant's Motion to Dismiss (#21), Exhibit B*, *Memorandum of Interview* ¶ 1. Mr. Wommer allegedly told the agent that in late 2009 or early 2010, he was advised by an IRS officer that he had not filed personal or corporate income tax returns for the years 2007-2009. Mr. Wommer immediately had his 2007 tax returns prepared and filed. His 2007 personal return resulted in a $28,000 tax due and owing. Mr. Wommer was also assessed an additional $17,000 in interest and penalties. Mr. Wommer paid the $28,000 owed in taxes, but refused to pay the $17,000 in interest and penalties. He stated that he filed a request for a waiver of the interest and penalties which the IRS denied, and that he filed an appeal from the denial of the waiver. The $17,000 in interest and penalties was partially offset by the refunds on his 2008 and 2009 tax returns which the IRS applied to the interest and penalties. This left a balance of $13,000 in interest and penalties which Mr. Wommer was contesting. *Id.* ¶¶ 2-6.

Mr. Wommer also allegedly told the IRS agent that he had previously received an $18,000 payment on a loan that he had made. The debtor then filed for bankruptcy and the bankruptcy trustee sent a letter to Mr. Wommer requesting that the $18,000 be turned over to the bankruptcy court. Mr. Wommer allegedly told the IRS agent that he was concerned that the bankruptcy trustee would levy on his bank accounts for the $18,000. *Id.* ¶ 11. Finally, Mr. Wommer told the IRS agent that he was concerned that his girlfriend, who resided in his house and had access to his bank accounts, would drain his accounts. *Id.* ¶ 10.

Mr. Wommer indicated that all three of these issues factored in his decision to transfer his funds into Ms. Lambelet's account. *Id.* ¶ 12. He stated, however, that he was mostly concerned with the bankruptcy trustee's potential levy over the issues with his girlfriend or the IRS. *Id.* Mr. Wommer also allegedly admitted that he knew what structuring is and that he had prosecuted several structuring cases during his time as an Assistant United States Attorney in Nevada in the 1990's. *Id.* ¶17. He stated that he set up the transactions in amounts less than $10,000 to avoid the cash transaction reporting (CTR) requirements. *Id.* ¶ 18.

There is apparently no dispute that the entire $75,700.62 seized from Ms. Lambelet's checking account belonged to Defendant Wommer. The withdrawals from Mr. Wommer's bank accounts as charged in the indictment, however, total only $72,500.00. The deposits into Ms.

Lambelet's checking account charged in the indictment total only $66,200.00. Another $9,500.00 of Mr. Wommer's funds were therefore deposited into Ms. Lambelet's account–although this deposit(s) is not charged as part of the structured transactions in the indictment.

Counts One and Two of the Superceding Indictment charge Defendant Wommer with structuring financial transactions in violation of 31 U.S.C. §5324(a)(3). Count Three charges Defendant with the structuring of financial transactions in violation of 31 U.S.C. §5324(a)(1). Count Four charges Defendant with tax evasion by attempting to evade and defeat the payment of $13,020.20 in interest and penalties owed on his 2007 taxes in violation of 26 U.S.C. §7201. Count Five charges Defendant with falsely stating and verifying on an IRS Form 433-A that he had only $1,000 in his bank accounts in violation of 26 U.S.C. §7206(1). Although the Government has also argued that Defendant Wommer committed "bankruptcy fraud" by attempting to avoid a levy by the bankruptcy trustee, Mr. Wommer has not been charged with a criminal offense in this regard.

## **DISCUSSION**

Defendant argues that the proposed forfeiture of the entire $75,700.62 seized from Ms. Lambelet's bank account violates the Eighth Amendment's prohibition against excessive fines. He therefore seeks an order in advance of trial requiring the Government to return the seized funds to him. The Government argues, however, that the entire amount is subject to forfeiture. The Government also argues that Defendant's motion is legally premature and not ripe for decision because a final judgment of forfeiture will not be entered until and unless Defendant is convicted of an offense charged in the indictment which makes the funds subject to forfeiture. Defendant argues, however, that he is entitled to a pre-trial determination of the validity of the seizure of his property.

Counts One and Two of the Superceding indictment charge Mr. Wommer with the violation of 31 U.S.C. §5324(a)(3) by structuring financial transactions in order to evade the reporting

requirements in 31 U.S.C. §5313(a).[1] The Superceding Indictment also seeks an *in personam* criminal forfeiture money judgment against Defendant Wommer up to $75,700.62 pursuant to 31 U.S.C. §5317(c)(1)(A) which states as follows:

> (A) The court in imposing sentence for any violation of section 5313, 5316, or 5324 of this title [31 U.S.C. § 5313, 5316, or 5324], or any conspiracy to commit such violation, shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto.

Pursuant to subsection §5317(c)(1)(B), the criminal forfeiture procedures set forth in 21 U.S.C. §853 govern criminal forfeitures under this provision.

The pre-indictment seizure warrant in this case was issued pursuant to the civil forfeiture provisions in 31 U.S.C. §5317(c)(2). *Response to Motion for Return of Property (#22), Exhibit 1.* That statute states as follows:

> Any property involved in a violation of section 5313, 5316 or 5324 ... or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

18 U.S.C. §981(b)(1) authorizes the Government to obtain a warrant for the seizure of property subject to civil forfeiture. Although the funds in Ms. Lambelet's bank account were seized pursuant to the civil forfeiture provisions, by virtue of the indictment the Government now seeks the forfeiture of those funds under the criminal forfeiture provisions in 31 U.S.C. §5317(c)(1).

**1. Whether the Defendant's Motion for Return of Seized Property Is Legally Premature.**

The Court first considers whether it has jurisdiction to entertain Defendant Wommer's

---

[1] The Court discussed the application of these statutes to the alleged transactions in Findings & Recommendations (#28), pp. 9-10. It remains the Court's view that the withdrawals from Mr. Wommer's bank accounts and the deposits into Ms. Lambelet's accounts constitute only one alleged structuring offense under 31 U.S.C. Section 5324(a)(3) and should therefore only be charged in one count. *See Findings & Recommendations (#28) and Order (#36) (adopting magistrate judge's findings and recommendations).*

5

motion for the return of seized property. In *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 265 (1989), the Supreme Court held that the criminal forfeiture provisions set forth in 21 U.S.C. Section 853(a) contains no exemption for assets that a defendant may wish to use for payment of attorney's fees in defending against the criminal charges. Citing its decision in *Caplin & Drysdale Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646 (1989), the Court also stated that "neither the Fifth or Sixth Amendments to the Constitution requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees." *Id.* 491 U.S. at 614, 109 S.Ct. at 2666. The Court further stated that assets in a defendant's possession may be restrained based on a finding of probable cause to believe that the assets are forfeitable. In so holding, the Court noted that "we have previously permitted the Government to seize property based on a finding of probable cause to believe that the property will ultimately be proven forfeitable. (citations omitted)." *Id.* 491 U.S. at 615, 109 S.Ct. at 2666. The Court declined to decide whether due process requires the district court to conduct an adversarial evidentiary hearing *before* a pretrial restraining order can be imposed.

The majority of federal courts of appeal that have addressed the issue hold that the Due Process Clause does not require an adversary hearing *prior* to the issuance of a seizure warrant or a restraining order for purposes of securing property subject to forfeiture. *United States v. Monsanto*, 924 F.2d 1186, 1195, 1203 (2nd Cir. 1991); *United States v. E-Gold, Ltd.*, 521 F.3d 411, 419-421 (D.C.Cir. 2008). Where the defendant shows that the seized or restrained assets are needed to pay for defense counsel, however, the Fifth and Sixth Amendments require that the district court grant defendant a post-seizure or post-restraint adversary hearing. At such hearing, the government is required to show that there is probable cause to believe (a) that the defendant committed the crime that provides a basis for forfeiture, and (b) that the property specified as forfeitable in the indictment is properly forfeitable. *United States v. Monsanto* and *United States v. E-Gold, Ltd.*, *supra. See also United States v. Melrose East Subdivision*, 357 F.3d 493, 499-501 (5th Cir. 2004); and *United States v. Michelle's Lounge*, 39 F.3d 684, 700-701 (7th Cir. 1994).

In this case, Defendant Wommer does not challenge the seizure of his funds on the grounds that there is no probable cause to support the structuring charges in the indictment or that the seized

6

funds are not subject to forfeiture under 31 U.S.C. Section 5317(c)(1) or (c)(2). Defendant, instead, argues that forfeiture of the entire $75,700.62 would violate the Eighth Amendment's prohibition against the imposition of excessive fines.[2]

In *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028 (1998), the Supreme Court stated that a punitive forfeiture is excessive under the Excessive Fines Clause of the Eighth Amendment if it is "grossly disproportionate to the gravity of the defendant's offense." In determining whether a forfeiture is grossly disproportionate, the Court adopted a four factor test which weighs the gravity of the defendant's offense by (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused. *Bajakajian*, 52 U.S. at 337, 118 S.Ct. at 038-39. *See also United States v. $100,348.00 In U.S. Currency*, 354 F.3d 1110, 1121-22 (9th Cir. 2004).

The defendant in *Bajakajian* attempted to leave the United States without reporting that he was transporting currency in excess of $10,000 as required by 31 U.S.C. §5316. An inspection of defendant's and his family's possessions resulted in the discovery of $357,144 in currency. The defendant was charged with a reporting violation under §5316(a)(1)(A). He was also charged with making a false statement to the U.S. Customs Service. The indictment sought forfeiture of the entire $357,144 pursuant to 18 U.S.C. § 982(a)(1). Defendant pled guilty to the reporting violation under § 5316(a)(1)(A), in exchange for the dismissal of the other charge and proceeded to a bench trial on the forfeiture count. The district court found that the entire $357,144 was subject to forfeiture because it was involved in the offense. The court found, however, that the funds were not connected to any other crime and that the defendant was transporting the money to repay a lawful debt. The district court also found that defendant "had failed to report that he was taking

---

[2] Defendant did not claim in his motion for return of seized property that the funds are needed to pay his attorney's fees. He first raised this assertion in his response to Government's motion to dismiss his motion for return of seized property. *Defendant's Response (#39), p. 9*. Defendant has not submitted an affidavit showing that he is financially unable to pay retained counsel without the seized funds.

currency out of the United States because of fear stemming from 'cultural differences': [defendant] who had grown up as a member of the Armenian minority in Syria had a 'distrust for the Government.'" 524 U.S. at 326, 118 S.Ct. at 2032. The district court concluded that forfeiture of the entire $357,144 would violate the Excessive Fines Clause. It therefore ordered the forfeiture of $15,000 and also imposed a sentence of three years probation and a fine of $5,000– the maximum fine under the Sentencing Guidelines.

The government appealed on the grounds that full forfeiture of the entire $357,144 was required and warranted under the statute. The defendant did not appeal from the $15,000 forfeiture judgment. The Supreme Court agreed with the district court that forfeiture of the entire $357,411 would have been excessive. The Court first noted that defendant's crime was solely a reporting offense and that it would have been permissible for him to transport money out of the country so long as he reported it. The defendant's violation was unrelated to any other illegal activities. The money was the proceeds of legal activity and was to be used to repay a lawful debt. The Court also stated that "[defendant] does not fit into the class of persons for whom the statute was principally designed: He is not a money launderer, a drug trafficker, or a tax evader." *Id.* 524 U.S. at 338, 118 S.Ct. at 2038. Under the sentencing guidelines, the maximum sentence that could have been imposed on the defendant was 6 months and the maximum fine was $5,000. The Court stated that these penalties confirmed the minimal level of culpability. The Court also found that the harm that the defendant caused was minimal. The failure to report the currency affected only the government, and only in a relatively minor way. There was no fraud on the government and no loss to the public fisc.

In *United States v. $100,348.00 In U.S. Currency*, 354 F.3d 1110 (9th Cir. 2004), the court affirmed a $10,000 civil forfeiture judgment pursuant to 31 U.S.C. §5317(c)(2) on facts similar to *Bajakajian*. In that case, an individual named Mayzel told an airport customs inspector that he was carrying only $5,000 when he was, in fact, carrying $100,348.00. Another individual, Amiel, subsequently claimed that the $100,000 belonged to him, that $90,000 of the funds were the proceeds from the sale of a store, and that he had asked Mayzel to deliver the $100,000 to his sister in Israel. Mayzel was convicted of making a false statement in violation of 18 U.S.C. § 1001 and

8

was sentenced to 205 days imprisonment and ordered to pay a special assessment of $100. No fine was imposed based on Mayzel's inability to pay. In affirming the civil forfeiture order, the Ninth Circuit stated that "a forfeiture of $100,348 would be excessive but that $10,000 would not be." *Id.* 354 F.3d at 1122. As in *Bajakajian*, the court stated that Mayzel's crime was solely a reporting offense and that it would have been lawful for him to take the money out of the country so long as he reported it. There was also credible evidence that the money came from a lawful source. Although no fine was imposed, under the Sentencing Guidelines the maximum fine that could have been imposed on Mayzel was either $5,000 or $30,000, depending on whether certain mitigating conditions applied. *Id.* at 1122. The court found that Mayzel's level of culpability was more than minimal. The only harm caused by the offense, however, was that the government would have been deprived of information that $100,348 left the country. The government did not suffer a financial loss.

At the other end of the spectrum, the Second Circuit in *United States v. Castello*, 611 F.3d 116 (2nd Cir. 2010), upheld a forfeiture in excess of $12 million plus the equity in defendant's home. The court stated that the proper amount of the forfeiture under §5317(c)(1)(A), as limited by *Bajakajian*, is the total forfeitable amount required by the statute, discounted by whatever amount is necessary to render the total amount not "grossly disproportional" to the offense of conviction. The defendant in *Castello* operated a check cashing business which cashed over $200 million in checks over $10,000. The defendant was convicted of failing to file thousands of currency transaction reports ("CTR's") required under 31 U.S.C. § 5313(a). The forfeiture amount was representative of the fees that the defendant earned from cashing checks for which the required CTRs were not filed. The court stated defendant's reporting violations enabled his customers to commit various acts of fraud and that defendant was the type of person, a money launderer, at whom the reporting statute was aimed. Although the maximum fine under the statute was $250,000, the court stated that the appropriate sentencing factor to consider under *Bajakajian* is the fine that would apply under the Sentencing Guidelines in the absence of a statutory fine limit. The court noted that the guidelines fine level was many times higher than the statutory maximum. In regard to the harm caused by defendant, the court stated that his "refusal to file CTRs helped his

customers evade taxes, cash fictitious checks, and commit securities fraud. The victims included private parties as well as the federal government." *Id.* 611 F.3d at 124.

*Castello* also states that the defendant has the burden of showing that the forfeiture is unconstitutional under the *Bajakajian* factors. *Id.* 611 F.3d at 120, citing *United States v. Jose*, 499 F.3d 105 108 (1st Cir. 2007) and *United States v. Ahmad*, 213 F.3d 805, 816 (4th Cir. 2000). In a decision issued shortly before *Bajakajian*, the Ninth Circuit stated that it uses a two-pronged approach for determining whether a forfeiture of property constitutes an excessive fine. *United States v. Ladum*, 141 F.3d 1328, 1349 (9th Cir. 1998). First, the government must show that the property was an instrumentality of the crime-that there was a substantial connection between the property and the offense. If the government satisfies the instrumentality prong, the claimant has the burden of showing that the forfeiture is grossly disproportionate given the nature and extent of his criminal culpability.

In arguing that Defendant's motion should be dismissed on jurisdictional grounds, the Government relies on *United States v. Talebnejad*, 460 F.3d 563 (4th Cir. 2006) and district court decisions following its reasoning. The defendants in *Talebnejad* were charged with operating a money transmitting business without a required state license in violation of 18 U.S.C. §1960. The indictment sought the forfeiture of approximately $18 million in property traceable to the charged offenses. The defendants moved to dismiss the indictment, in part, on the ground that the $18 million forfeiture sought in the indictment violated the Eighth Amendment's Excessive Fines Clause. The district court declined to address this portion of defendants' motion on the ground that it was premature. The Fourth Circuit agreed with the district court that the challenge was not ripe. The court cited *United v. Covey*, 232 F.3d 641, 646 (8th Cir. 2000) in which the court stated that it did not have jurisdiction to consider an appeal challenging a forfeiture when no final forfeiture order or judgment had been entered. *Talebnejad*, 460 F.3d at 573.

In *United States v. Coutentos*, 2009 WL 3806192, *4 (N.D. Iowa 2009), the indictment charged the defendant with the production of child pornography. The indictment contained a forfeiture allegation, but the decision does not describe the nature of the property sought to be forfeited. Based on *Talebnejad*, the court denied defendant's motion to dismiss the forfeiture

10

allegation pursuant to the Eighth Amendment on the grounds that it was premature. In *United States v. Tedder*, 2003 WL 23204849 (W.D. Wis. 2003), the court denied defendant's Eighth Amendment challenge to a preliminary criminal forfeiture verdict. The court held that defendant's challenge was premature because no forfeiture order had been entered and no final order would be entered until sentencing. The court noted, however, that defendant had virtually no chance of prevailing on his Eighth Amendment argument.

This Court agrees that it would be legally premature to entertain a motion to dismiss the forfeiture allegation in the Superceding Indictment on the grounds that it violates the Excessive Fines Clause of the Eighth Amendment. Mr. Wommer will have the opportunity to challenge the amount of the requested forfeiture on Eighth Amendment grounds if he is convicted. *Talebnejad*, *Covey*, *Coutentos* and *Tedder*, however, did not involve motions for the return of seized property allegedly needed for payment of the defendants' attorney's fees. Arguably, where a defendant demonstrates that he needs the seized or restrained funds to pay his defense attorney's fees, he should be able to move for the return or release of seized assets that exceed the maximum amount of any forfeiture that could reasonably be imposed based on the undisputed facts of the case. Neither party has cited any decision that addresses this specific issue, however, and the Court has not found any through its own research.

Assuming that the court has jurisdiction to entertain such a motion, the burden should be on the defendant to establish, on the basis of the undisputed facts, the maximum amount of forfeiture that could reasonably be imposed in accordance with the Eighth Amendment's prohibition against excessive fines. *See e.g. United States v. Castello* and *United States v. Ladum, supra* (holding that the defendant has the burden of proof on the Eighth Amendment issue). The burden thus imposed should be similar to that on the moving party in a motion for summary judgment in a civil action.

In this case, Defendant has not shown that he will be unable to pay his retained counsel unless some portion of the seized funds are released to him. Defendant's counsel recently confirmed to the Court that he will continue as Defendant's counsel. *See Minutes of Proceedings (#40), October 20, 2011 Status Conference.* Absent such a showing of financial

11

need, the Court does not have a jurisdictional basis to entertain Defendant's motion. *United States v. Monsanto*, 924 F.2d 1186, 1195, 1203 (2nd Cir. 1991) and *United States v. E-Gold, Ltd.*, 521 F.3d 411, 419-421 (D.C.Cir. 2008).

### 2. Whether Forfeiture of the Entire $75,700.62 or Some Lesser Amount is Constitutionally Excessive as a Matter of Law.

Assuming the Court has jurisdiction to entertain Defendant's motion, the next question is whether forfeiture of the $75,700.62 would be constitutionally excessive as a matter of law. The Court rejects the Government's assertion that the proposed forfeiture of Defendant Wommer's funds is not subject to Eighth Amendment protection because they are the "fruits of the crime" or the proceeds of illegal activity. *See Government's Response to Motion for Return of Seized Property (#22), p.10*. The Government relies on *United States v. Real Property Located at 22 Santa Barbara Drive*, 264 F.3d 860, 874 (9th Cir. 2001) in which the court held that forfeiture of proceeds of illegal narcotics trafficking cannot be considered punishment, as it is simply parts the owner from the proceeds of criminal activity. Defendant Wommer asserts that the $75,700.62 was acquired from lawful sources and the Government has provided no information to the contrary. Forfeiture of the $75,700.62 is sought on the grounds that the funds were involved in Defendant's structuring offense in violation of 31 U.S.C. §5324(a)(3). While such conduct makes the funds subject to forfeiture, it does not make them the *proceeds* of criminal activity. *See Bajakajian, supra. United States v. Real Property Located at 22 Santa Barbara Drive*, is therefore distinguishable. *See also United States v. Jalaram, Inc.*, 599 F.3d 347, 354-55 (4th Cir. 2010) (rejecting the view that forfeiture of proceeds from criminal activity are exempt from an excessive fines analysis under the Eighth Amendment, but also stating that in most cases courts will ultimately find a forfeiture of proceeds from criminal activity to not be grossly disproportional).

The Court, however, agrees with the Government's assertion that the nature and extent of Defendant Wommer's alleged illegal conduct is more serious than that in *Bajakajian* or *$100,348.00 In U.S. Currency*. Defendant Wommer's alleged violations occurred over a period of approximately two weeks during which he made a series of withdrawals from his own

12

accounts and arranged for deposits into Ms. Lambelet's account, all in amounts less than $10,000.  Mr. Wommer allegedly told the IRS special agent that he was familiar with the currency transaction reporting requirements and that he had prosecuted structuring cases himself when he was an Assistant United States Attorney in the 1990s.  Mr. Wommer also allegedly made statements indicating that he made the transfers in order to avoid potential levies on his funds by the bankruptcy trustee or the IRS.  These allegations indicate a level of intent and willfulness to evade the reporting requirements that was not present in *Bajakajian* or *$100,348.00 In U.S. Currency*.

The second *Bajakajian* factor considers whether the violation was related to other illegal activities.  Again, Mr. Wommer allegedly transferred his funds into Ms. Lambelet's bank account to avoid possible levies by the IRS and the bankruptcy court trustee.  He has now been charged with tax evasion and making a false statement on an IRS form as part of an attempt to prevent the IRS from collecting the $13,020 in penalties and interest owed on his 2007 taxes.  Although not charged as a criminal offense, Mr. Wommer also allegedly sought to prevent the bankruptcy trustee from recovering the $18,000 loan repayment which the trustee apparently claimed was a preferential transfer.  While these alleged offenses or acts have yet to be proven, Defendant's alleged violation of §5324(a)(1) and (3) constitutes a more serious offense than that in *Bajakajian* because of its alleged connection to other alleged criminal or fraudulent activity.

A person convicted of violating §5324(a) shall be imprisoned for not more than five years or fined more than $250,000.  *See* 31 U.S.C. §5324(d)(1) and 18 U.S.C. §3571(b)(3).  The Government argues that if Mr. Wommer is convicted under §5324(a), he faces a prison sentence under the United States Sentencing Guidelines of between 33 and 41 months and a fine in the range of $7,500 to $75,000.  *See Government's Response to Motion for Return of Seized Property (#22), pp. 14-15*.  Because Mr. Wommer could be fined as much as $75,000 under the Sentencing Guidelines, the Government argues that a forfeiture in the comparable amount of $75,700.62 is presumptively constitutional.  *See United States v. Wallace*, 398 F.3d 483, 486 (5th Cir. 2004) and *United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1309 (11th Cir. 1999).

*See also United States v. Grossi*, 359 Fed.Appx. 830, 2009 WL 4913587 (C.A.9 (Cal.) (unpublished decision relying on *Wallace* and *817 N.E. 29th Drive.*). The Government also argues that even if the fine is at the low range of $7,500, a forfeiture in an amount roughly ten times greater is not necessarily constitutionally excessive based on a consideration of all the *Bajakajian* factors. *See United States v. Cheeseman*, 600 F.3d 270, 284-85 (3rd Cir. 2010). *Cheeseman* also states that the court may consider the statutory maximum fine in deciding whether the forfeiture amount is excessive. In this case, the statutory maximum fine is $250,000 which is more than three times the amount of forfeiture sought by the Government.

The fourth factor listed in *Bajakajian* considers the extent of harm caused by the violation of the currency reporting statute. This is not a case like *Bajakajian* that, on its face, involved no financial harm to the government or third persons. Mr. Wommer's alleged violations have potentially caused financial loss to the United States through Mr. Wommer's alleged effort to avoid payment of the penalties and interest assessed against him by the IRS. His alleged efforts to avoid a levy on his accounts by the bankruptcy trustee has also potentially caused financial loss to the subject debtor's bankruptcy estate and the creditors thereof.

Defendant Wommer did not address any of the Government's arguments regarding the *Bajakajian* factors in his reply brief. *See Defendant's Reply (#23)*. He, instead, argues that his alleged conduct presents exactly the same situation as *Bajakajian*. *Id. p. 4*. As the foregoing discussion indicates, however, this case is not the same as *Bajakajian*. Defendant also appears to argue that the Government has the burden of showing that the forfeiture of the entire amount is not excessive under the Eighth Amendment. *Defendant's Response to Government's Motion to Dismiss (#29)*. Defendant, however, has the burden of proof on this issue in the forfeiture proceeding, and to the extent that the Court has jurisdiction to entertain the instant motion, it is Defendant's burden to show that there is no reasonable basis upon which forfeiture above a certain amount could be justified under the Eighth Amendment. Defendant has not done so. Although it is not the Government's burden to do so, the Court also finds that it has presented a reasonable factual basis upon which the District Court could find that forfeiture of the entire $75,700.62 does not violate the Eighth Amendment's prohibition against excessive fines. The

Court, however, makes no conclusion, at this stage, as to the amount of forfeiture that should ultimately be ordered if Defendant is convicted.

## CONCLUSION

Defendant has not made the necessary showing that he needs the seized funds in order to continue to be represented by his retained counsel. The Court therefore lacks jurisdiction to entertain Defendant's motion for return of the seized property pursuant to the Fifth and Sixth Amendments. To the extent that jurisdiction exists, however, it is Defendant's burden to demonstrate, as a matter of law, that forfeiture of some or all of the seized funds constitutes an excessive fine under the Eighth Amendment as a matter of law. Defendant has not met his burden in that regard. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Paul Wommer's Motion for Return of Seized Property (#14) is **denied.**

**IT IS FURTHER ORDERED** that the Government's Motion to Dismiss Wommer's Motion for Return of Seized Property (#26) is **denied**, without prejudice, on the grounds that it is **moot.**

DATED this 27th day of October, 2011.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge